## SUPREME COURT.

THE PEOPLE *ex rel.* CHARLES A. RICHMOND agt. THE PACIFIC MAIL STEAMSHIP COMPANY, and others.

A *stockholder* in an incorporated company, cannot be deprived of the right to inspect the books of the company, because they are kept in a *particular way*, or because they contain along with the information to which he is entitled, other information which he has no right to demand.

If a corporation does not keep the books which the statutes prescribe, it is its duty to permit an inspection of such as it does keep for the purpose of recording the transactions which the statues give the stockholders the right to know. And such inspection may be enforced by *mandamus*.

*Brooklyn Special Term, November,* 1867.

THE relator, a stockholder of this corporation, having applied for an inspection of the transfer books, and the book or books of the company containing the names of the stockholders, was offered the transfer books and two books containing registers of certificates of stock extending back to 1864. The corporation has no stock list, nor do they keep the book which the thirteenth section of their charter hereafter noticed, requires them to keep.

The relator states, that to ascertain who hold stock in the company, and the number of shares, would require an examination of every entry in the books offered, and in any book of the same description, going back to the organization of the company in 1848, and that he afterwards demanded an inspection of the stock ledger, which was refused

He then states what a stock ledger is, and shows that an inspection of it would give him the information sought.

AARON J. VANDERPOEL and
JAMES EMOTT, *for stockholders.*
CLARKSON N. POTTER, WM. M. EVARTS and
CHARLES O'CONOR, *for the company.*

GILBERT, J. The company do not deny that an inspection

of the stock ledger would give the relator the information which he has a right to have, but they justify their refusal to exhibit it on the ground that it is a book of accounts between the company and its shareholders, and shows their dealings in the stock of the company; that it is always regarded as confidential between the parties concerned, and that the·information it contains might be used for improper purposes.

A case is not made, which under the rules of the common law, entitles the relator to a *mandamus*. (*Taylor's Ev.* § 1102; *Grant on Cor.* 311.) His right to the remedy sought, depends on the construction to be given to the thirteenth section of the company's charter, and the first section of title 4, chapter 18, part 1, of the Revised Statutes. (1 *R. S.* 601, §1.) The charter provides as follows:

" Section 13. It shall be the duty of the said corporation to cause a book to be kept by the treasurer or clerk thereof, containing the names of all persons who are, or shall, within two years, have been stockholders in said corporation, and showing their places of residence, the number of shares of stock held by them respectively, and the time when they respectively became the owners of such shares; which book shall at all reasonable times be open for the inspection of the creditors and stockholders of the said corporation, at the office or principal place of business of said corporation."

The charter also confers the usual power to make by-laws. The 18th by-law provides that in ascertaining the number of votes on which each stockholder is entitled to vote at the election of directors, the inspectors shall be governed by the number of shares standing in his name, as shown by the stock ledger after the closing of the transfer books preparatory to such election. By the Revised Statutes, " the book or books of any incorporated company in this state, in which the transfer of any stock in any such company shall be registered, and the books containing the names of the stockhold-

ers in any such company, shall be open to examination by any such stockholder."

This latter enactment was first made in the memorable act to prevent fraudulent bankruptcies of corporations, passed in 1825. The provision of the charter is in aid of the objects of this statute, and in the determination of this question both are to be taken together. Being remedial acts, and also beneficial to the public, they should be equitably construed, so as to promote and not impede or frustrate the objects intended. (*Cotheal* agt. *Browner*, 1 *Seld.* 565 ; *Reviser's notes*, 5 *Edm. Stat.* 280.)

The question then is, whether the stock ledger is embraced within the designation of the books which the statutes cited give the relator a right to inspect or examine. If it is, I think the duty of enforcing the right by *mandamus* exists, and under the circumstances of this case, is the appropriate and only remedy. (*People* agt. *Throop*, 12 *Wend.* 185.)

Turning then first to the Revised Statutes, I think it clear that a right of inspection generally is not given, but that it is restricted to the register of transfers and the list of stockholders ; or if such books are not formally kept, to such books as the company do keep, for the purpose of showing the original ownership of the stock, and the changes which shall have occurred from time to time in such ownership. The book prescribed by the charter is such a book. It is a register of transfers and a stock list combined. The stock ledger, although not exactly the book prescribed by the charter, will serve all the purposes of that book. The books offered do not answer this purpose. They contain the original transactions merely ; whereas the statutes give a right to inspect the accounts, or registration of them. The stock ledger is such an account or register, although it contains more than the legislature intended. It is the only book kept by the company, an inspection of which would secure the objects of the statutes. The charter provides for the obtaining of the requisite information in the summary and conveni-

ent mode which the book would afford. The company cannot be permitted to defeat these objects, by omitting to keep the book prescribed. The statutes do not point out the mode in which the books shall be kept, but describe them by a reference to the contents of them. A stockholder cannot be deprived of the right to inspect them because they are kept in a particular way, or because they contain along with the information to which he is entitled, other information which he has no right to demand.

· ˙These statutes were passed for the benefit of the stockholders, and for the government of the company. The right of inspection is a substantial one; the object of it being to aid the stockholder in promoting the interests of the company and his own, by the choice of directors.

Although the legislature did not intend to create an offensive or vexatious espionage, yet if such an evil results from the willful neglect of the company to keep the books, which would secure the right of the stockholder to inspect, without producing the evil, it is not the fault of the stockholder, but that of the company, and such neglect ought not to operate to his prejudice. To justify the refusal of the company to .show the only book. the inspection of which would secure the right granted by the statutes to the stockholder, would, in effect, enable corporations to defeat or render nugatory the statutes, by means of a willful omission of duty by the officers of such corporation. ·

This cannot be tolerated. If the corporation does not keep the books which the statutes prescribe, it is its duty to per- ·mit an inspection of such as it does keep for the purpose of ˙recording the transactions, which the statutes give the stockholders the right to know.

It may be added that the by-law referred · to, makes the ˙stock ledger evidence of the stock held by each stockholder. Every stockholder has a right to know who are qualified voters, and the number of votes each ˙stockholder is entitled to cast. (1 Seld. 567.) How can he acquire this informa-

tion otherwise than by an inspection of this book ? It is said it would be wrong to issue the high prerogative writ of *mandamus*, for reasons of convenience merely. The answer to this is, that the relator is under no obligation to accept a substitute for that to which he is legally entitled. No power is vested in the officers of the company to compel him to take anything in lieu of that which the statutes give him. (1 *Seld. sup.*)

Such are my conclusions upon the case. It follows, therefore, that the motion must be granted.

## COURT OF APPEALS.

Aleaxnder S. Diven, receiver of the Yates County Bank agt. Elizabeth Lee, Executrix, and Alfred Lee and Thomas Lee, Executors of the last will of Benjamin Lee, deceased.

Proceedings to enforce the responsibility of the *stockholders of a bank* under the act of 1849, providing for winding up the affairs of the bank, are to be confined to stockholders; and the court is not to exercise jurisdiction over any who do not come within the definition of that term, as given in the second section of that act.

Where a *judgment* obtained under these proceedings, declared the defendant's *testator* to have been a stockholder in the bank, and directed the collection of the amount thereof, out of the assets in the hands of his executors, the defendants, when it appeared from the record itself that it had not been ascertained that the estate was chargeable, at the time the judgment was rendered—the report of the referee being that the *executors individually* were chargeable as stockholders; which report was ratified and confirmed by the court:

*Held*, that the court in rendering judgment against the estate, acted without authority, and the judgment was void for want of jurisdiction.

*January Term*, 1867.

Appeal from an order of the supreme court rendered at general term in the fifth district, affirming an order of the surrogate of Onondaga county, dismissing proceedings instituted by the plaintiff to compel the defendants to account as executrix and executors of the will of Benjamin Lee, deceased.

The facts sufficiently appear in the opinion.