### In re STEINWAY.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

1. CORPORATE BOOKS—EXAMINATION BY STOCKHOLDER.
   The common-law right of a stockholder to examine all the books of the corporation at proper times, and where a good and sufficient reason exists for the inspection, and the information required cannot be obtained in any other way, has not been abridged by statute in this state.
2. MANDAMUS—WHEN GRANTED.
   The proper remedy for the enforcement of a stockholder's common-law right to inspect the corporation books is by mandamus.
   Ingraham and Van Brunt, JJ., dissenting.

Appeal from special term.

Application by Henry Steinway for mandamus to compel the officers and directors of Steinway & Son to permit inspection of the books. From an order denying the motion, relator appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Wheeler H. Peckham, for petitioner.
G. W. Cotterill, for respondent.

PATTERSON, J. The relator applied for a mandamus to compel the officers and directors of a corporation in which he is a shareholder to permit him to examine and inspect certain books and papers of that corporation, other than the transfer books. The application was denied at special term, no ground of the denial being mentioned in the order, but it appearing otherwise that the learned judge was satisfied that the relator had no absolute legal right to the writ, and concluded that the examination was desired solely for annoying and oppressive purposes.

There is much, in the papers submitted in answer to the application, condemnatory of the relator's past conduct, in connection with vexatious lawsuits and proceedings against the corporation and its directors; but, nevertheless, certain matters are set out in his petition which would justify an allowance of the inspection of the books of the corporation, if the court has the power to grant it. The relator is the owner of about 7 per cent. of the whole capital stock of the Steinway & Sons corporation. It is alleged by the petitioner that he has not been able to obtain any statement of the business or management

of the corporation for about five years, except that he had an inspection of the annual balance sheet and inventory in 1893. He also had submitted to him, under the provisions of the fifty-second section of the stock corporation law, something which purported to be a statement of the assets and liabilities of the corporation as of December 31, 1896. An examination of that statement is sufficient to show that it does not constitute the particular account required by the statute of all assets and liabilities, but is only a very general statement of aggregates of items. It was further shown on this application that there had been a great diminution in the amounts of dividends declared by the corporation; that they were but 5 per cent. in the year 1896, and that never, with that one exception, had they, · since 1883, been less than 10 per cent., and that they had at times been as high as 18 or 20 per cent. It was also shown that the relator had been refused access to the books from time to time, although some years ago he was permitted to examine the same, but for alleged abuses in that examination he was excluded from its further pursuit. It was also shown that other large stockholders in control of the corporation have been making some effort or agreement looking to the transfer of the business to an English company, and that they have applied to the relator to sell his stock at $250 a share, and that the scheme of the transfer to the English corporation involves the issuing of stock which shall bring in a larger return than 5 per cent. on the shares. Under these circumstances, the relator wishes to examine the books to ascertain, among other things, the value of his shares, what they are really worth in view of the actual condition of the business, and how it is possible that a business which pays only 5 per cent. on stock at par would be taken by intelligent persons on a basis of guarantying 5 per cent. on $2\frac{1}{2}$ times that par. There are certainly matters brought to our attention in these papers that would require the issuance of the writ, if the court, as said before, had power so to do. I think it has that power, and that it is a part of its general jurisdiction, as successor of the supreme court of the colony of New York, whose jurisdiction was substantially that of the king's bench in England.

There is no statutory provision in this state respecting the right of shareholders to examine and inspect the general books of corporations. The only existing enactment on the subject relates to transfer books, as to which a particular provision is made. But that legislation does not affect the right of a shareholder to examine other books, which right remains as it was at law. Nor does it, by a provision for the examination of one book, necessarily exclude the right to examine others. I am not prepared to say that there is a complete and absolute right, under any and all circumstances, of a shareholder to examine at will the books of a corporation, but there is a qualified right; the qualification being that a good and sufficient reason exists for the inspection, and the information required cannot be obtained in any other way. Text writers of recognized authority are unanimous in their statements as to this law. Angel & A. Corp. § 681; Cook, Stock & S. § 511; Mor. Priv. Corp. § 473. The latter writer points out the difference in the rule as applied in England and in the United

States, and the authorities cited by him establish the right of a stockholder to inspect the books and papers of a corporation for a definite and proper purpose and at a reasonable time. There are no real controlling authorities in the state of New York on the subject. I can find no positive statement of the law in this state other than that contained in a special term decision of the supreme court in People v. Mott, 1 How. Prac. 247, where Beardsley, J., held that a director or corporator had a right, at all reasonable times, to examine all the books, papers, and records of the company, and he directed a mandamus to issue for that purpose. There are many cases holding that mandamus is the proper remedy to procure an inspection of corporate books and records, and the question of the right is ordinarily treated in connection with that of the method of its enforcement. It is said in High, Extr. Rem. § 308, that mandamus is the proper remedy to enforce the rights of corporate stockholders and members to an inspection of the books and records of a corporation, and the writ will issue for this purpose upon a proper showing of the relator's right, and a refusal on the part of the corporate authorities to allow the inspection; citing People v. Throop, 12 Wend. 183; People v. Pacific Mail S. S. Co., 50 Barb. 280. An examination of transfer books has been compelled by mandamus in many cases, such as In re Sage, 70 N. Y. 222; People v. Eadie, 63 Hun, 320, 18 N. Y. Supp. 53.

I do not find that there is anything in the legislation of this state which has in terms abridged the common-law right of stockholders in this regard. The Steinway corporation was organized in the year 1876, but it was under the general manufacturing act of 1848 and its amendments. No new right was given by the provision of that act relating to the transfer book and its being subject to inspection. It was partially declaratory of a right respecting one book, but did not exclude the right to examine any other book. Nor does section 27 of chapter 472 of the Laws of 1862 establish an exclusive method of obtaining information relating to the business and affairs of a corporation. It affects a right of a person or persons holding a certain percentage of stock, and creates a new method before unknown of attaining an object, but it is not to be construed as a legislative enactment that a person holding a less number of shares than the percentage mentioned in that section cannot procure information to which he is entitled by some other process. The provisions of section 16 of chapter 611 of the Laws of 1875 apply exclusively to what were known as business corporations,—that is to say, corporations specially organized under the provisions of that act,—and these provisions, so far as they related to the examination of books of account containing business transactions, were also only declaratory of a common-law right; and it is well understood that, where an affirmative statute is merely declaratory, the common-law rule relating to the subject is not repealed, but the two things co-exist. Potter, Dwar. St., c. 3, pp. 68, 69. So, under the general statute of 1892, remodeling the corporation law of the state and repealing antecedent acts, the common-law right of stockholders was not impaired, but still existed. This legislation is not to be construed in such a way as to deprive holders of a small proportion of stock in the corporation of the right to know how

their interests are being administered.    I think the right is not one
of statutory creation.    It might be taken away by statute, but it
never has been.    Statutory provisions are not always to be construed
as exclusive.    Here the right is one subject to the control of the court,
when it is sought to be enforced by the remedy of a mandamus.

I am of opinion that the relator established certain facts which re-
quire the court to permit an examination of the corporation's books,
as there is no other way in which he can acquire the information to
which he is entitled.    As to the right, nothing more need be held than
that it exists, its extent to be determined in particular cases, in con-
nection with the object for which the inspection is desired.    Al-
though, in that sense, it is a qualified right, nevertheless, the object
being legitimate, the right is a legal one, and mandamus is the proper
remedy for its enforcement.    It is a remedy which is to be allowed
only in the sound discretion of the court, and under such control and
safeguards as may prevent abuse.

The order appealed from should be reversed, with $10 costs and dis-
bursements, and motion for mandamus granted, with $10 costs, the
terms of which to be settled upon the entry of the order upon this
appeal.

O'BRIEN and McLAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting).    The question of the power of the
supreme court, in the exercise of its general supervision over corpora
tions, to grant a mandamus to compel the directors of a corporation to
allow to a stockholder an inspection of its general books of account, in
the absence of legislation upon the subject, is not clear; but, in view
of the recent legislation in this state upon the subject, I do not think
that it is material that we should determine it.    That the court of
king's bench in England, from an early period, exercised a general
supervisory power over corporations, is undoubted; but whether this
power was exercised so as to compel the directors or trustees of a
private business corporation to allow a stockholder owning a minority
of the stock a general inspection of its books and papers is doubtful.
Although it is easy to find clear declarations of judges of the courts
of England asserting such a power, and although that power existed
in England, it does not necessarily follow that it was vested in the
courts of this state upon the reorganization of the judiciary subse-
quent to the American Revolution, although there are several au-
thorities in this country, that are entitled to great weight, which
claim and exercise such power.    It has always been the rule, how-
ever, that such power, if it existed, was discretionary, and was never
exercised except when clearly necessary in the protection of a right of
a stockholder, and a stockholder must show that the exercise of this
power was required for the protection of some right of his that was in
jeopardy.    Whether or not such power should ever be exercised was
largely in the discretion of the court upon the particular facts submit-
ted in each case.    It was always subject to the control of the legis-
lature.    It was derived, if it existed, from the power of the state to
supervise and control corporations created by it; and where the state

which had created the corporation, either expressly or by implication, denied such relief to a stockholder, it is clear that the court should not exercise that power. The corporation whose books are sought to be examined in this case was organized in the year 1876, under the manufacturing act of 1848, and has continued in actual prosecution of the business for which it was incorporated down to the present time. By section 25 of that act it was provided that it shall be the duty of the trustees of every such corporation or company to cause a book to be kept by the treasurer or clerk thereof, containing the names of all persons, alphabetically arranged, who are or shall, within six years, have been stockholders of such company, and showing their places of residence, the number of shares of stock held by them respectively, and the time when they, respectively, became the owners of such shares, and the amount of stock actually paid in; which book shall, during the usual business hours of the day, on every day except Sunday and the Fourth day of July, be open for the inspection of stockholders and creditors of the company, and their personal representatives, at the office or principal place of business of such company, in the county where its business operations shall be located, and any and every stockholder, creditor, or representative shall have a right to make extracts from such books; and by this section a penalty is provided for a failure to comply with this provision of the statute. By section 27, as amended by chapter 472 of the Laws of 1863, it is provided that, whenever any person or persons owning a named percentage of capital stock of any company shall present a written request to the treasurer thereof that they desire a statement of the affairs of such company, it shall be the duty of such treasurer to make a statement of the affairs of such company, under oath, and to deliver such statement to the person who presented the said written request to the said treasurer, and the section provides a penalty for neglect or refusal to comply with the provisions of this section. By section 2 of chapter 472 of the Laws of 1863, it is provided that, if such written statement should not be demanded during the year preceding the annual meeting of the stockholders of any company for the election of directors or trustees, it shall be the duty of the treasurer of every such company to prepare and exhibit to the stockholders then and there assembled a general statement of the assets and liabilities of such company. By section 16 of chapter 611 of the Laws of 1875, which is an act to provide for the organization of certain business corporations, it was provided that it shall be the duty of the directors of every corporation organized under that act to cause to be kept at its particular office or place of business correct books of accounts of all its business transactions, and every stockholder in such corporation shall have the right, at all reasonable times, by himself or his attorney, to examine the books of account of such corporation; and by section 17 of the act it was provided that the corporation should also keep a book containing the names of the stockholders of the corporation, substantially in accordance with the provision of the manufacturing act of 1848, before referred to. Thus, the legislature had provided, for corporations organized under these two acts, a method by which the stockholders could obtain information as to the business affairs of the corporation.

In both cases the stockholders had the right to examine the books containing a list of the stockholders or the stock books of the corporation. In the case of a corporation organized under the general manufacturing act of 1848, a stockholder was entitled to have submitted to him a sworn statement of the affairs of the corporation; while under the act of 1875 the directors were bound to keep correct books of account of its business and transactions, and each stockholder in the corporation was given the right to examine those books at all reasonable times. Upon the general revision of the laws of this state in 1892, both of these acts were repealed. See chapter 687, Laws 1892. By that act a "stock corporation" was defined to be a corporation having capital stock divided into shares, which was authorized by law to distribute to the holders thereof dividends of the stock of the corporation, and the corporation in question would come within this definition of a "stock corporation." By section 29 of the stock corporation law (chapter 688, Laws 1892), every stock corporation was required to keep at its office correct books of account of all its business and transactions, and a book to be known as the "Stock Book," containing the names, alphabetically arranged, of all persons who are stockholders of the corporation. The stock book of every such corporation shall be open daily, during business hours, for the inspection of its stockholders and judgment creditors, who may make extracts therefrom; and the section provides a penalty for a failure on the part of any corporation to keep such books, or to keep any book open for inspection, as therein required. By this section, applicable to all corporations, the legislature required the corporation to keep correct books of account of its business and transactions, and a book to be known as the "Stock Book." It required the stock book to be kept open for the inspection of the stockholders, but contained no such provision as to the books of account of its business and transactions. Section 52 of the act prescribes a method by which the stockholders could obtain information as to the financial condition of the company or its business. It is there provided that stockholders owning a fixed percentage of the capital stock of any corporation, other than a monied corporation, may make a written request to the treasurer or chief fiscal officer for a statement of its affairs, under oath, embracing a particular account of all its assets and liabilities, and the treasurer shall make such statement, and deliver it to the person presenting the request, within 30 days thereafter; and the section provides a penalty for a neglect or refusal to comply with such request. Thus, the legislature, in repealing the former laws relating to the right of stockholders to inspect the books of the corporation and to obtain information as to the business it transacts and its financial affairs, has passed a general statute applying to all stock corporations, and providing a method by which a stockholder is entitled to obtain such information. The statute provides the books that shall be kept by the corporation. It specifies the books that shall be submitted to the stockholders, and a method by which stockholders may obtain information as to the business and financial affairs of the corpora tion. It gives no power to a stockholder to examine generally the books containing the record of the daily business of the corporation,

but provides a method by which a stockholder may obtain the information which the legislature deemed he was entitled to by means of a sworn statement of the affairs of the corporation, instead of requiring the corporation to submit its books, which were in daily use, to be examined by stockholders whenever they should for any reason desire such an examination. These provisions of the stock corporation law are general, applying to all corporations of the character specified. They prescribe a system binding upon all such corporations. They provide for giving the stockholders such information as it was determined they were entitled to, and they are to obtain that by means of a sworn statement, rather than by an examination of the books containing a record of the transactions of the corporations. It seems to me that such a method, so prescribed by the statute, is exclusive in its character, and is inconsistent with the right of a stockholder to require the officers of corporations to submit for examination the books containing the accounts of the business transactions of the corporation. The subject was before the legislature. One of the acts repealed contained a provision which gave a stockholder the right to examine the books of account. The other of the acts repealed contained a provision requiring the officers of a corporation to furnish a detailed statement of its business to a stockholder upon demand. The legislature, in adopting a general system applicable to all corporations, provided that the stockholder could examine the stock book of the corporation, but as to information concerning the general business of the corporation it was to be acquired by the officers of the corporation by a sworn statement of its transactions, assets, and liabilities, rather than by an examination of the books of account of the corporation. Here we have a plain legislative declaration of the right that a stockholder should have as to the examination of the books of the corporation and as to the means to be adopted for acquiring information as to the business affairs of the corporation, and this system excludes the right of the stockholders to examine the books of account of the corporation. The maxim, "Expressio unius est exclusio alterius," is applicable to the construction of statutes, and the books are full of cases in which a grant of a right to an individual excludes the exercise of other rights. As an illustration of the cases in which this maxim has been applied, see 23 Am. & Eng. Enc. Law, p. 446, note. We are considering here the existence of the right of a stockholder to an inspection of the books of a corporation, not the power of the court to enforce such a right, if it exists; and it seems to me that when the legislature has provided a method by which a stockholder can acquire such information, which system it is evident, from the course of legislation, was intended to apply to all stock corporations, giving to a stockholder the right to examine certain books of the corporation, and requiring the officers of the corporation to give to the stockholder information as to the contents of other books by a sworn statement instead of an examination of the books, the right of the stockholder to require the corporation to allow him to examine the books was limited to those specifically named, and as to the other information the stockholder desired he was confined to the remedy provided by statute. For this reason we

think that the court below was right in denying this motion, and the order is affirmed, with costs.

VAN BRUNT, P. J., concurs.

