PEOPLE ex rel. MACKEY v. AMERICAN UNION LIFE INS. CO.

(Supreme Court, Trial Term, New York County. May 31, 1900.)

CORPORATIONS—BOOKS—EXAMINATION—STOCKHOLDER'S RIGHT—MANDAMUS.
    Where relator, a stockholder in the defendant corporation, applied for a writ of mandamus to compel the defendant to allow him to make an examination of its books, and to make copies of some of them, in order that he might be able to determine if contributions to make good the capital stock had not been withdrawn, the writ will be denied, where prior to his application he had been defeated in an action against the corporation and its officers on the issue that such contributions had been withdrawn.

Application by the people, on the relation of William M. Mackey, for a peremptory writ of mandamus to compel the American Union Life Insurance Company to allow the relator to make an examination of their books. Writ denied.

H. R. Squier, for relator.
Potter & Miner, for respondent.

McADAM, J. The right of a stockholder to compel the corporation in which he is interested to allow an examination of its books is not an absolute one. Such relief will be granted only for some purpose necessary to his protection. People v. Walker, 9 Mich. 328; In re Steinway, 31 App. Div. 74, 52 N. Y. Supp. 343, affirmed in 159 N. Y. 250, 53 N. E. 1103; In re Pierson, 28 Misc. Rep. 726, 59 N. Y. Supp. 1003, affirmed in 44 App. Div. 215, 60 N. Y. Supp. 671. But, where the stockholder presents facts which disclose that the relief is essential, his application may be granted, as the books are not the private property of the managers, but are the records of their transactions as trustees for the stockholders. Huyler v. Cattle Co., 40 N. J. Eq. 392, 398. The relator's chief grievance is that in December, 1895, the capital of the company was impaired to the extent of $131,300; that contributions to make good the impairment were subsequently withdrawn by the contributors, in consequence of which he determined to ascertain the true financial condition of

the company, and the manner in which his property was being managed by its officers.  The charge of withdrawing contributions would be regarded as serious but for the fact that the relator brought an action against the company and its officers, founded on the same charge, and the court, after a trial upon the merits, found the facts to be directly contrary to those charged by the relator, and by its judgment, duly entered June 5, 1899, denied the relator any relief in that action.  This would seem to dispose of that charge effectually.  Having been defeated in that action, the relator served a written demand upon the company for leave to examine and copy (1) the by-laws of the company; (2) the minutes of its meetings from January 1, 1896; (3) the entire books of the company, to ascertain the disposition made of the stocks, bonds, mortgages, money, and other property contributed to make up the impairment of capital. In short, the relator seeks to investigate for himself the matters already investigated by the court on the trial of the prior action. Upon the refusal of the officers of the company to accede to this extraordinary demand, the relator invoked the aid of the court by mandamus to coerce the officers into compliance.  An alternative writ was granted, and the issue created by the return thereto is now on trial.  No mismanagement or wrongdoing is charged by the relator, other than that which has already been adjudicated upon adversely to his contention.  On the trial of this proceeding the relator frankly admitted that he was opposed to the present management of the company, and would like to bring about a change therein, and such is his evident purpose.  The company has been doing an active business since 1894, and, like all similar institutions, it operates under the supervision and control of the insurance department of the state, to which annual reports of its financial condition have been regularly made.  These have always proved satisfactory, and are now on file, open to inspection.  The books, papers, and everything connected with the business of the company and its management, are open at all times to inspection and scrutiny by the examiners connected with the insurance department.   2 Rev. St. (9th Ed.) p. 1149, § 39.  This authority is to protect stockholders as well as the public.  A copy of the by-laws was furnished to the relator before the trial of the present proceeding.  Under the circumstances, the court is of opinion that the relator does not need the relief he seeks, and that it would not be a wise exercise of judicial discretion to compel the company to allow the relator, who is inimical to its management, to make an unlimited inquisitorial research into the company's transactions and affairs, with leave to him and his assistants to copy all of its books and papers, and make such use thereof as he pleases, particularly as he has been defeated in his action founded on substantially the same alleged grievance as is now presented.  If the relator had made a more modest demand on the company, it might have been complied with.  It is certainly doubtful whether any large corporation would willingly honor a stockholder's demand, worded in the broad form in which the relator made his, or that such corporation ought to be required to do so, except for substantial and meritorious reasons.  If it had ap-

peared that any particular book or piece of information possessed by the company would have benefited the relator in any appreciable manner, the court would have required such aid to be furnished, by an order limiting the relief to such specific matter.  The trouble is, the relator demands all the company has or knows, whether he needs it or not, and purposes to determine after he gets it whether it is of any materiality or utility to him.  This is certainly up to date; but courts have not as yet indicated a willingness to subscribe to any such practice, for it would be fraught with manifest inconvenience to the orderly business of the corporation, and possible injury to other stockholders.  Insurance examiners may overhaul suspicious companies in that way, but it does not follow that courts must, on every application of a stockholder, direct a similar course.

The proceedings must be dismissed, and the application for a peremptory writ denied.