# CHARLESTON.

## Building & Loan Association v. Sohn.

Submitted September 5, 1903.——Decided November 14, 1903.

1. City Property—*Sale.*

   A separate part of a city, village or town lot cannot be sold under the provisions of chapter 31 of the Code of 1899. As to such lot, the sale must be of the whole lot, or of an undivided interest therein. (p. 103).

2. City Property—*Sale.*

   Where the sale, as to such lot, is described, in the memo·

randum of sale, as "½ of lot 35x120," and, in the report of sale, as "½ lot," the quantity sold is on undivided one-half of the lot.   (p. 106).

3.   CITY PROPERTY—*Purchaser—Surveyor.*
    In such case ,the purchaser must cause a survey and report to be made by the county surveyor, before obtaining a deed; but the provision of section 17 of chapter 31 of the Code, requiring division of the land, is not applicable. It applies only to purchasers of separate quantities or parts of tracts of land, other than city, village or town lots. (p. 106).

4.   TAX SALE.
    Power to sell real estate for non-payment of taxes must be expressly conferred by law.   (p. 108).

5.   STATUTE.
    If the sense of a statute be doubtful, such construction should be given, if possible, as will not conflict with general principles of law.   (p. 109).

6.   STATUTE.
    Of two constructions of a statute, either of which is warranted by the words of an amendment, that is to be preferred which best harmonizes with the general tenor and spirit of the act.   (p. 112).

7.   STATUTE—*Construction.*
    In construing a statute every word in it must be given its full effect, if that can be done consistently; but, if full effect cannot be given, it must be made effective as far as possible.   (p. 112).

8.   STATUTE—*Construction.*
    A statute may be construed contrary to its literal meaning, when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention of the legislature. (p. 112).

9.   STATUTE.
    Words in different parts of a statute must be referred to their proper connections, giving each in its place its proper force.   (p. 112).

10.   NOTARY PUBLIC.
    The offices of notary public and judge of a criminal court are incompatible.   (p. 113).

11.   DEFACTO OFFICES.
    One who forfeits his right to an office of which he is the

incumbent, by accepting another which is incompatible with it, and afterwards performs the functions of the office forfeited, is an officer, *de facto*, and his acts, done before removal from such office, are valid as to persons other than himself. (p. 114).

12. NOTARY PUBLIC—*Criminal Judge.*
     A certificate of acknowledgment, made by a notary public who had accepted the office of judge of a criminal court, is valid. (p. 115).

Appeal and *supersedeas* from the Circuit Court, Mercer County.

Action by Old Dominion Building and Loan Association against Nathan Sohn. Judgment for plaintiff and defendant appeals.

*Reversed and Bill Dismissed.*

W. WALTER McCLAUGHERTY for appellees.

H. A. RITZ and J. M. McGRATH for appellants.

POFFENBARGER, JUDGE:

On the 12th day of December, 1899, Nathan Sohn purchased a lot in the city of Bluefield, as delinquent for the non-payment of the taxes thereon, at a sale made by the sheriff of Mercer County in the memorandum and receipt given to him by the sheriff and in the sheriff's report of sale, said lot is described as having been sold in the name of Irene Cooper for the non-payment of the taxes thereon for the year 1897, as being thirty-five by one hundred and twenty feet in size, and situated in Bluefield. In the memorandum and receipt the quantity of land sold is designated as "½ of lot 35 x 120 Bluefield," and in the report of sale as "½ lot."

On the 22nd day of December, 1900, J. W. Bailey, deputy for E. W. Bailey, surveyor of lands for said county, made a report to the clerk of the county court, which was admitted to record, describing the lot by its location and bounds, and record evidence of title, and further showing that there is a house situated on it, that it is impossible to lay off, to said Sohn, the interest purchased by him, without running through said house, and that he, the surveyor, had made no division of said lot.

On the 20th day of February, 1901, the clerk of the county

court of said county made a deed to Sohn, reciting the delinquency and sale of land, the purchase by Sohn of "an undivided one-half interest" in said lot, the lapse of more than one year since the time of said purchase, the non-redemption of said lot, and the report made by the surveyor.

This suit was brought by the Old Dominion Building and Loan Association to set aside said deed as illegal and void for the following reasons: First, that, under his purchase, Sohn was not entitled to have a deed for an undivided one-half of the lot, but only for one-half of the lot according to area, not value, and so laid off as not to include the improvements, if practicable. Second, that Hugh G. Woods, before whom the deed was acknowledged as a notary public, had, before the date of said acknowledgment, vacated his office by accepting the office of judge of the criminal court of said county and had no authority to take the acknowledgment. Third, that, in fact, said lot was not delinquent, for non-payment of taxes for the year 1897, as all taxes thereon for said year had been paid.

There was a demurrer to the bill which the court overruled, and then the defendant answered, and depositions were taken and, upon the hearing, the plaintiff tendered the amount of taxes, interest and costs which the defendant had paid to the sheriff, with interest at twelve per cent per annum on the aggregate, and offered to pay any additional costs or charges to which the defendant might be entitled, which tender and offer the defendant declined, and thereupon the court entered a decree setting aside the deed, from which decree the defendant has appealed.

In determining whether the purchaser was entitled to a deed for an undivided one-half of the lot, it is necessary to consider the statute governing the sales of delinquent town lots and the execution of deeds therefor. As they now stand, sections 8, 17, 19 and 24 of chapter 31 of the Code, relating to these subjects, are inconsistent and contradictory. To be more explicit, it may be said that section 17 is contradictory of the other sections named. Section 8, prescribing what shall be sold, says: "The sale shall be of each tract of land, or city, village, or town lot, or of such separate quantities or parts of such tract, or of such undivided interest in such lot as shall be sufficient to satisfy the whole of the taxes." This statute separates real estate into two

classes, tracts of land and lots. Tracts may be sold in their entirety, or, separate quantities, or parts thereof, may be sold. City, village or town lots may be sold in their entirety or undivided interests therein may be sold, but there is no provision for the sale of separate quantities or parts of town lots.

Past legislation on this subject makes this interpretation of the statute clear. Section 6 of chapter 37 of the Code of 1860 reads as follows: "The sale of tracts of land shall be of each tract separately, or of such quantity or part thereof, as shall be sufficient to satisfy the taxes thereon, with interest and commission as aforesaid, and its proportion of said expense; and the sale of town lots, shall be of each lot separately, or of such undivided interest therein as shall be sufficient to satisfy the taxes thereon, with such interest, commission, and proportion of expense."

This section was amended by chapter 206 of the Acts of 1871, and made to read in part as follows: "The sale shall be of such tract of land, or town lot, or of such separate quantities or parts of such tract or undivided interest in such lot as shall be sufficient to satisfy," etc. Chapter 117 of the Acts of 1872-3 re-enacted said section as found in the Acts of 1871, in so far as it relates to the sale; and chapter 130 of the Acts of 1882 amended and re-enacted said section 8 and made it read as it now stands in the Code. That section, read in the light of said previous legislation, and the history of legislation concerning the mode of making sale of delinquent land and lots, as well as by its terms, clearly means that each town lot shall be sold as a whole or an undivided interest therein shall be sold, and gives no authority for selling a separate quantity or part thereof.

Section 19 of chapter 31 of the Code prescribes the form of the deed to be made by the clerk of the county court to the purchaser in the case of a sale of a tract of land or a part thereof. The final clause of that section says: "If the purchase was of a city, town or village lot, or a part thereof, or an undivided interest therein, the above form must be varied according to the facts."

Section 24 says that a deed may be made for an undivided interest in a town lot. The first part of that section reads as follows: "Where two or more tracts or parts of tracts, or city, town or village lots, charged to the same person, or persons,

with taxes, for the same year, or years, shall have been sold for taxes and purchased by the same person at such sale, the purchaser thereof, or his heirs, devisees or assigns may obtain from the clerk of the county court several deeds for each tract or part of a tract, and city, town or village lot, or undivided interest therein, or for any number of them less than the whole, or he may obtain one deed for the whole of them as he may prefer; but every such deed shall describe each tract and part of a tract, and each lot and undivided interest in a lot separately; and such deed when so made for several tracts and parts of tracts, and several lots and undivided interests in several lots, shall be as valid and as effectual to pass to the grantee therein the title, legal and equitable to every such tract, and part of a tract, and to every such lot and undivided interest in a lot, as a separate deed for each would have been if such separate deed had been made to such grantee."

The form of deed prescribed by section 19, applicable to tracts of land, provides for the conveyance to the purchaser of "a tract of land (or——acres, part of a tract of land, or the undivided——part of a tract of land, as the case may be,)" etc.

It will be observed here that although no sale of an undivided interest in a tract of land is authorized, the form of deed provides for the conveyance thereof; and that, although there is no authority given by section 8 for the sale of a part of a town lot, section 19 speaks of a purchase of a part of a town lot. It will be further observed that this confusion and contradiction of section 8 found in section 19 is not carried into section 24. That section harmonizes with section 8.

But the confusion does not stop here. Section 17 says: "The purchaser of a part, or an undivided interest of any tract or city, town or village lot of land, so sold and not redeemed within one year as aforesaid, his heirs or assigns, before obtaining a deed therefor shall, at his or their expense, have the quantity or undivided interest so purchased, surveyed and laid off at his or their expense; the said quantity so laid off to be bounded in part by either or any of the lines of the tract, at the option of the purchaser, his heirs or assigns, so as not to include the improvements on the same (if it can be avoided), and to be in one body, the length whereof shall not be more

than double the breadth, where that is practicable. .A plat and description thereof shall be returned to the clerk of the county court of the county in which the sale was made, and said clerk shall record the same in the deed book along with the deed to the purchaser, his heirs or assigns, if one be made." This proceeds upon the theory that there can be a sale of a part of a city, town or village lot of land. Moreover, it must be determined whether it means that in the case of a purchase of an undivided interest, the purchaser can have a deed therefor until he shall have had the same laid off, that is, partition made by the surveyor, although the form of deed in section 19, as well as the express provision of section 24, provides for a conveyance of an undivided interest. A surveyor might, with great propriety, be authorized to lay off so many acres of a tract, but there could be no reason for the assumption that he is especially fitted or qualified for the division of the tract of land according to quantiy, quality and value, as would be necessary in the case of laying off to the purchaser an undivided interest.

Prior to the act of 1882, the sections concerning the survey, report and deed were in perfect harmony with the section authorizing the sale. Section 17 of chapter 117 of the Acts of 1872-3 provided that the purchaser of a part of any tract of land sold and not redeemed within one year, his heirs or assigns should have the quantity purchased laid off at his or their expense; and that when the entire tract of land was sold and not redeemed, the purchaser, his heirs or assigns should have a report made by the surveyor. No survey or report was required in the case of the purchase of a town lot or an undivided interest therein. As to such a purchase, section 19 provided as follows: "If the sale be of a town lot, or of an undivided interest in such lot, and a report be made by a surveyor describing the same, and such report be ordered by the clerk of the county court to be recorded, the deed shall refer to the said report. But when, in case of a sale of a town lot, or of an undivided interest in such lot, there is no such report, the clerk of the county court shall, nevertheless, execute a deed therefor to the purchaser, if he desires the same."

In determining what Sohn purchased, if anything, at the sale at which he claims to have purchased an undivided one-half of the lot, the statute as it now stands, together with the

prior statutes *in pari materia* must be considered, and by the principles governing the construction of the statute, it must be ascertained what the sheriff had power to sell. Did the legislature intend, by the changes made in the statute by the Act of 1882, to confer upon him authority to sell a part of a town lot? If so, does the statute as it now stands effectuate that intent? A comparison of section 8 of the Acts of 1882 with the same section of the Acts of 1872-3 shows that the former, not only re-enacted the latter, but amended it also. Several changes were made in it, but the language determining what should be sold was not altered. Section 24 of the present statute was made up by consolidating, amending and re-enacting, part of section 23 of the Act of 1872-3 and the whole of section 24 of that act, and the language above quoted from said section 24 of the present statute, carefully distinguishing between tracts of land and town lots, is entirely new and not found in the old statute. This careful preservation of the language, conferring authority to sell and prescribing the mode of sale, which had been carried in the statutes of Virginia from a date so remote as 1832, when sales by the sheriff for delinquency were first authorized, and in those of this state to the present time, strongly argues that there has been no intention to depart from it or to alter. But the language used in sections 17 and 19 militates against this view and indicates that the legislature had a contrary intention, for those sections assume that purchases of parts of town lots can be made. But do they authorize such a sale? They do not do so in express terms. Section 17 says the purchaser of a tract or undivided interest of any tract or city, town or village lot of land shall have the same laid off. This assumes that there may have been a sale of a part of a town lot. Section 19 says, if the purchase was of a city, town or village lot or a part thereof or an undivided interest therein, the form of the deed shall be varied according to the facts. This is likewise an assumption or supposition only. The most that could be said for this language is that it gives implied authority to sell part of a town lot.

Can such a power arise by implication? Statutes authorizing tax sales are always strictly construed. "Where summary proceedings are authorized by statute, the effect of which is to divest or affect right of property, the rule holds good that they

are to be strictly construed. The power conferred must be exercised precisely as it is given, and any departue will vitiate the whole proceeding. It is, indeed, a general rule that all statutes conferring special ministerial authority by which any man's estate may be affected, must be strictly pursued." Sedg. Stat. Con. 302. In this work on page 303, it is said that the validity of statutes authorizing sales of land for non-payment of taxes was at first seriously questioned on the ground of their being in conflict with the constitutional provisions, which in most, if not all, the states, guarantees to every citizen "the protection of the law of the land," and that while this objection has been overruled and the power sustained on the grounds of immemorial usage and state necessity, it has been held in all cases that it must be strictly pursued and that its exercise will be vigilantly watched. Such being the nature of the power of the sale of lands for non-payment of taxes, and the rule of construction applicable to statute conferring it, it seems clear that it cannot arise by mere implication, but must be expressly conferred. This view is supported by Blackwell on Tax Titles, section 551, where it is said: "The officer who executes the power of selling land for taxes can exercise no implied power whatever. He acts in hostility to the owner of the estate, and not as his agent, and he must pursue his authority literally." Section 125 of the same work says, in part: "It is a naked power, which in this instance may be defined to be a power operating upon an estate, in which the officer who executes it has no manner of interest, and over which he has no control other than that which the law has expressly delegated to him. It is a statutory power, depending alone upon the will of the sovereign, and not upon the consent of the owner. The statute creates the power, selects the agent to execute it, and prescribes the formalities which shall attend its execution."

To sustain such power on the theory of implication would violate another well settled rule of construction. The statute is inconsistent in its terms. In such case, "Regard must be had to all the parts of a statute, and to the other concurrent legislation *in pari materia;* and the whole should, if possible, be made to harmonize; and if the sense be doubtful, such construction should be given, if it can be, as will not conflict with the general

principles of law, which it may be assumed the legislature would not intend to disregard or change." Suth. Stat. Con. section 287. The reason for withholding the power to sell a part of a town lot is obvious. The purchaser may select the part he buys. His selection is only limited to the extent that it must be bounded in part by either or any lines of the tract and not be more than twice as long as it is wide, where that is practicable, and not include the improvements if that can be avoided. Under this, the front only of a valuable lot might be so taken as to render the residue practically valueless, or a valuable building may be cut into. These are the considerations upon which the section of the statute, authorizing the sale and prescribing the mode thereof, has withheld from the sheriff the power to sell a part of a town lot. For seventy years, this authority has been withheld, and such construction should not be given the statute as to contravene so important a principle of statutory law, when another can be given without it, and one of two different constructions must be adopted. While gross negligence is not to be imputed to the legislature, Sedg. Stat. Cons. Law, 366, no rule of law prevents the court from attributing an inconsistency to the accidental or inadvertent misuse of words in a statute. This conclusion is adverse to the theory advanced by counsel for the appellee. The purchaser took an undivided interest in the lot, if anything.

It will be observed that his purchase is not described in the memorandum and receipt and report of sale as an undivided one-half of the lot. These papers say the purchase was for one-half of the lot. As has been shown, the power of sale must be strictly pursued. It cannot be departed from in any material respect. Is the omission of the word "undivided" material? Is it fatal to the sale and the deed? To say that it is, would be to restrict the language, and make it mean less than its terms import. One-half of the lot means the one-half of the lot according to quantity and value, not merely according to its area. If the word "undivided" had been prefixed it could have meant only that one-half of the lot had been sold, but that the lot had not been severed so as to give sole possession and enjoyment of the one-half to the purchaser thereof. It would have neither enlarged nor restricted the meaning of the words "one-half of lot." While the selling officer can exercise no implied power,

it is to be observed that he had express power and authority to sell an undivided interest. Having such power, there is a presumption in favor of his having properly exercised it. "In *Ives* v. *Lynn,* where it did not appear affirmatively in the deed, or return of sale, that no more land was sold than was necessary to raise the amount of taxes due upon the entire tract offered, the court held that it was a presumption of law that the collector performed his duty, and conducted the action fairly and properly; and in the absence of proof rebutting this presumption the sale was sustained as far as this point was concerned." Blackwell on Tax Titles, section 542. The presumption of a sale of an undivided one-half is aided by the failure of the statute to give power to sell anything but an undivided interest in a town lot, and the further consideration that nothing is laid off prior to the sale for any purchase. The severance from the whole tract of a part of a tract purchased at a tax sale, is made long after the sale. Upon these considerations, the conclusion that an undivided interest was sold is irresistable.

An undivided one-half of the lot having been purchased, was it essential to the procurement of the deed, to have this laid off as prescribed by section 17 of chapter 31? That section says the purchaser of a part or an undivided interest of any tract or city, town or village lot of land shall have the same surveyed and laid off in the manner therein prescribed before obtaining a deed therefor, and section 18 says if the purchase be of an entire city, village or town lot, no survey or report thereof need be made. If sections 17 and 18 are to be literally applied, there must be a partition in the case of the purchase of an undivided interest—partition to be made by the surveyor. These sections import that there shall be no conveyance of an undivided interest. But it has been seen that section 24 contemplates and authorizes a deed for an undivided interest, as does also the form of deed prescribed by section 19. Here is a flat contradiction and irreconcilable inconsistency, upon a consideration of the letter of the statute alone. Such a condition of the statute calls upon the court for construction. One part of it says there shall be partition. Other parts say there need not be partition. There cannot be partition in the manner prescribed by this statute, without a violent innovation upon the general law of partition, an innovation which does violence to the principles

underlying that law. Compulsory partition is the exercise of judicial power and functions. Obedience to the letter of this statute makes it a mere ministerial function. It authorizes the county surveyor to make the partition, without any inquiry as to his fitness and capacity for the performance of such duty, and without any judicial supervision of his action. Where there is inconsistency and the sense of the statute is doubtful, a construction should not be given that is in conflict with the general principles of law. It may be assumed that the legislature did not intend to disregard or change them. Suth. on Stat. Con. section 287. The statute must be construed as a whole and parts thereof given effect; if possible. Every word must have some effect, if possible, but words may be restrained and limited to an effect less than that which they literally import. "A construction which must necessarily occasion great public and private mischief must never be preferred to a construction which will occasion neither, or not in so great a degree, unless the terms of the instrument absolutely require such preference. Of two constructions, either of which is warranted by the words of the amendment of a public act, that is to be preferred which best harmonizes the amendment with the general tenor and spirit of the act amended. A statute may be construed contrary to its literal meaning, when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention." Suth. on Stat. Con. section 323.

There is another principle or rule of construction, which, applied to this statute, enables the court to give some effect to the language of sections 17 and 18, without carrying that effect to the extent of requiring partition in the case of a purchase of an undivided interest. General words, when the sense requires it, and the intention will be furthered thereby, may be taken distributively. A part of a tract may be laid off according to the mode prescribed by section 17. A town lot in which an undivided interest has been purchased may be surveyed and a report made, giving a description of the whole lot to be followed by the deed. Thus, in either case, the surveyor may perform a function without going to the extreme of making a partition, and it must be held that this is the meaning of that statute, and that the legislature intended no more than that.

Survey and report, as found in these two sections, are applicable to purchases of whole tracts and undivided interests in town lots "Laid off" must be limited and held to refer only to purchases of parts of tracts of land. "Words in different parts of a statute must be referred to their proper connections, giving each in its place its proper force." Suth. Stat. Con. section 282. Upon this construction of the statute, no partition was necessary, and there was power in the clerk to make the deed conveying an undivided interest, notwithstanding there was no division of the lot. Before such deed could be made a report of the surveyor was necessary, and such report was made.

The contention that the land was improperly returned and sold because the taxes had been paid thereon is wholly unsupported by the evidence. The description of the land in the memorandum of sale and report of sale has been already set out in a former part of this opinion. The description found in the tax receipts exhibited with the bill, the only evidence of payment offered, does not correspond with it. In one of these receipts the property is described in it, not as a town lot, but as being "acres of land." In the other, its character is not indicated further than that it is real estate. The valuation in these two receipts correspond, thus indicating that it is the same property. One receipt is from the sheriff and the other from the city sergeant, and both are for the year 1897. Nor does the amount of tax in the sheriff's receipt, relied upon as evidence of payment of the tax, correspond with that found in the memorandum of sale and the report of sale. In the receipt, the total amount of taxes for State, county and district purposes is two dollars. In the memorandum and report, the taxes, including interest thereon, which could not possibly be large, the time being only two years, amount to nine dollars and forty-six cents.

It remains now to inquire whether the deed is void because acknowledged before one who had vacated his office of notary public by accepting the office of judge of the criminal court. The two offices are clearly incompatible. "No judge, during his term of office, shall practice the profession of law or hold any other office, appointment or public trust, under this or any other government, and the acceptance thereof shall vacate his judicial office. Nor shall he, during his continuance therein, be eligible to any political office." Section 16 Art. 8 Cons. W.

Va. While this does not say in terms that an office held by a person, at the time he qualifies as a judge, shall be thereby vacated, it does forbid the holding of any other office while acting as judge. This inhibition is express, and, to make the language effective, it must be held that the acceptance of the office of judge vacates the other office. It is a rule of common law that where a person holding one office, accepts another incompatible office under the same government, his right to the former is, by such acceptance, ended and nullified. *Rodman* v. *Harcourt*, 4 B. Mon. (Ky.) 224. The offices of notary public and judge may be incompatible under article 5 of the Constitution, declaring that the legislative, executive and judicial departments shall be separate and distinct, and that no person shall exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature, but the decision of this question is unnecessary. Woods forfeited the office of notary public by qualifying as judge of the criminal court. Does it follow that the certificate of acknowledgment is void?

In the brief of counsel for appellant, Maupin on Title of Real Estate, page 59, is quoted, as showing that if a person taking an acknowledgment and making a certificate thereof, assumed to act in an official capacity, in doing so, and had color of title to the office, the certificate would be held good in a collateral proceeding on the ground that the taking of the acknowledgment is the act of a *de facto* officer and cannot be questioned in such proceedings. The work referred to is not in the library, but the proposition is well supported by authority. Indeed, it goes further than that. Such acts will be sustained in any proceeding, collateral or direct, in the interest of third parties or the public. They are only invalid as against the public, and as to the *de facto* officer himself. He cannot set them up in his own favor or against the public. "The act of an officer, *de facto,* where it is for his own benefit, is void, because he shall not take advantage of his own want of title which he must be cognizant of; but where it is for the benefit of strangers or the public, who are presumed to be ignorant of such defect of title, it is good." *Rodman* v. *Harcourt,* 4 B. Mon. (Ky.) 224, 233. To the same effect see *McGregor* v. *Balch,* 14 Vt. 428; *Hoglan* v. *Carpenter,* 4 Bush (Ky.) 89;

*Attorney General* v. *Marston,* 66 N. H. 485; *Green* v. *Wardwell,* 17 Ill. 278; *Woodside* v. *Wagg,* 71 Me. 207; *Johnson* v. *McGinley,* 76 Me. 432; *Petersilea* v. *Stone,* 119 Mass. 465 *State* v. *Carroll,* 38 Conn. 449; *Pooler* v. *Reed,* 73 Me. 129; *Brown* v. *Lunt,* 37 Me. 423; *Belfast* v. *Morrill,* 95 Me. 580.

This line of cases has been selected not only to show the extent to which the acts of *de facto* officers are held valid, but to show, as well, that a person who forfeits an office by the acceptance of another incompatible one, and then exercises the functions of the office forfeited, is held to be an officer *de facto,* and that his acts are held valid as to third parties until the office so forfeited has been adjudged and declared vacant. Thus, in *Hoglan* v. *Carpenter,* a postmaster accepted the office of county judge and continued to hold the office as postmaster. As he held one office under the federal government which the State courts had no power to declare vacant, it was held that he was a judge *de facto,* and not *de jure,* the State court having power to declare the office of judge vacant, but that his acts were binding and valid as to third parties in all proceedings. In *Woodside* v. *Wagg,* the judge of the municipal court accepted a seat in the legislature, by which action, he ended his office of judge, but continued to perform its functions, and his acts were held valid, although it was said he might be removed upon information filed against him in behalf of the State. In *Johnson* v. *McGinley,* the disclosure of a poor debtor was held valid, in an action on a poor debtor's bond, although one of the persons selected to hear it, had, subsequent to the date of his qualification as a trial justice, accepted and was holding, the incompatible office of constable. In *Commonwealth* v. *Kirby,* 2 Cush. 577, on an indictment for assault and battery and resistance to an officer, it was held to be no defense that the officer acted under a warrant issued by a justice who had disqualified himself by accepting an incompatible office. In *Sheean's Case,* 122 Mass. 445, the court refused to discharge, on a writ of *habeas corpus,* a person who had been committed to jail on a conviction of larceny by a judge who had forfeited his office of judge of the police court by accepting a seat in the general court. In *Pooler* v. *Reed,* 73 Me. 129, an action of trespass for an illegal arrest, the defendant was not permitted to justify for the reason that he made the arrest as constable,

which office he had held, but had forfeited by accepting the office of justice of the peace. The court said that as to the public and third persons his act was valid, but as the action was against him for his illegal act, he could not justify and thereby take the benefit of it.

An authority binding upon this Court as to the general proposition, is *Maddox* v. *Ewell*, 2 Va. Cas. 59, the syllabus in which reads, in part, as follows: "*Quaere*. If a justice of the peace accept the office and commission of a coroner, is that a forfeiture of his office as justice? But if it does, yet such acceptance does not vacate such of his subsequent acts as justice, as may have been done before his disqualification is established by some proper judicial proceeding for that purpose instituted." In exact alignment with this is the doctrine announced in *Adams* v. *Mengel*, 8 Atl. R. 390; *Keyser* v. *McCissan*, 2 Rawle. 140; *County* v. *Trimmer*, 95 Pa. St. 97. *Adams* v. *Mengel* decides a proposition very nearly like the one here under consideration. A justice of the peace accepted the incompatible office of clerk of the courts of oyer and terminer and quarter sessions of his county, and, afterwards, took acknowledgment of a mortgagor, and the acknowledgment was held good. To the same effect is *Davidson* v. *State*, 135 Ind. 254, where, on a trial for murder, a deed was offered in evidence, the acknowledgment of which had been taken before a notary public, who was then filling the office of deputy recorder, and the court said: "The notary was at least an officer *de facto* and his acts, as to third parties, were valid," citing *Leech* v. *State*, 78 Ind. 570, and *Baker* v. *Wambaugh*, 99 Ind. 312. To the cases herein referred to, holding that a notary public is an officer, within the meaning of this rule, may be added *Governor* v. *Gordon*, 15 Ala. 72, and *People* v. *Rathbone*, 145 N. Y. 434, both solemnly deciding that a notary public is an officer.

While this Court has never ruled upon the exact point raised here, it has declared the general principle asserted in the cases above cited. *Knight* v. *West Union*, 45 W. Va. 194; *State* v. *Carter*, 49 W. Va. 709. Moreover, this general principle of the common law has been declared by statute. "All judgments given and all acts done by any person, by authority or color of *any office*, or the deputation thereof, under the restored government of Virginia or of this State, *before his removal therefrom, shall*

*be valid,* though it may afterwards be decided or adjudged that he was not lawfully elected or appointed or was disqualified to hold the office, or that the same had been forfeited or vacated." Section 15 chapter 7, Code.

Are the former owner and grantee of a tract of land, sold and conveyed for non-payment of taxes thereon, third parties within the meaning of this proposition of law? The former owner is no party to the deed. That instrument is adverse to him. It takes up and passes his title to another, and cuts off his equity of redemption under the statute. The recordation of it is intended to bind him by constructive notice, just as that of other deeds binds purchasers for value without notice and creditors; and it goes further, binding him whether he has notice or not. One of its peculiar purposes is to give him notice that the deed has been made in the second year after the sale, and that the right of redemption is forever gone. The grantee is a party to the deed, and, as claimant thereunder, it is to his interest to uphold it. His situation is similar to that of any other purchaser. But this is not the best. "Third parties," as used by the courts in the cases cited, means persons other than the *de facto* officer. His acts are invalid as to him, but valid as to all other persons. Such is the language of the judges and the result of the decisions, and our statute has, at least, as much breadth and force.

The statute does not expressly require a tax deed to be acknowledged. It does require the recordation of such deed, and that may, by implication, make acknowledgment necessary to its validity. But it is unnecessary to decide this question. If acknowledgment is not essential, the deed is good. If it is essential, the acknowledgment is good under the principles above noted, and, as there is no other valid objection to the deed, it is good.

The law being adverse to the appellee upon all the questions presented, the decree is erroneous, and must be reversed and the bill dismissed with costs.

*Reversed and Dismissed.*