# CHARLESTON.

STATE *ex rel.* KELLER v. GRYMES.

Submitted March 16, 1908.    Decided April 20, 1909.

1.  CORPORATIONS—*Property and Books—Right of Directors to Examine.*

    Each member of the board of directors of a private corporation is clothed by law with equal rights and powers, and each has a right, at all reasonable times, to make an investigation of the property and funds, books, correspondence and papers of his corporation, which are in the possession of its agent, or general manager, and to make memoranda thereof for his own information as such director.  (p. 453.)

2.  SAME.

    The right conferred by general law on an individual director to make such investigation is not abrogated by section 2276 of the Code of 1906.  (p. 458.)

3.  STATUTES—*Construction in Favor of Preserving Right.*

    If a statute is susceptible of two constructions, one consistent with pre-existing rights and the other in derogation thereof, the courts will give to it that construction which preserves the pre-existing rights.  (p. 456.)

Error to Circuit Court, Kanawha County.

*Mandamus* by the State, on the relation of one Keller, to compel J. C. Grymes to give relator full access to all the correspondence, books, records, and papers of the Wake Forrest Mining Company.  A peremptory writ was awarded, and Grymes brings error.

*Affirmed.*

BROWN, JACKSON & KNIGHT, for plaintiff in error.

PRICE, SMITH, SPILLMAN & CLAY, for defendant in error.

WILLIAMS, JUDGE:

This is a proceeding by *mandamus* in the circuit court of Kanawha county and involves the question of the right of a director of a corporation, who is also one of its stockholders, to inspect, and make copies of so much of the books, records, accounts and correspondence of such corporation, as he may desire.

The relator is a stockholder and director in the Wake Forest Mining Company, a West Virginia corporation, engaged in the business of mining and selling coal in Kanawha county. Its capital stock consists of 250 shares of the par value of $100 each. Relator owns 30 shares and is one of the directors of whom there are five, and has been a stockholder and director since the formation of said company in the year 1902. J. C. Grymes, another stockholder, is also one of the directors, and is president, treasurer and general manager of the company, and keeper of the records, contracts, papers and correspondence of the company.

Relator filed his petition in the circuit court of Kanawha county on the 27th day of August, 1907, praying for a writ of *mandamus* against said Grymes to compel him to give relator "full and free access to all correspondence, books, records and papers of said company." He alleged in his petition that his sole purpose in making the demand "was in order to ascertain whether the affairs of said Wake Forest Mining Company were being honestly and economically administered in the equal and impartial interests of all its stock-holders, and to ascertain facts which it was his right and duty to know as a Director of said Company; and that he had, and has now, no interests adverse to those of said Company, in any way."

The alternative writ issued, and the defendant moved to quash it, which motion was overruled. Respondent then answered, admitting many of the facts recited in the writ, and denying others. He admits that relator was not permitted to examine the "pay rolls and general books, including journals, ledger and cash books of the Wake Forest Mining Company, the daily and monthly cost sheets showing operating expenses and the general books of the company and other of its records showing the cost of producing coal, the salary and wages paid and the other items of expenses charged against the gross proceeds of sale of coal." Respondent attempts to justify his refusal to permit the inspection of such records &c., on the ground that relator and W. R. J. Zimmerman, another stockholder and director, desire the information for the purpose of harrassing and annoying the management of the said company by trying to force the other stockholders to buy their shares of stock at an extravagant price; or to force the other stockholders to sell to them their shares of stock. He alleges that Zimmerman and relator are brothers-in-

law, and are friendly to each other and unfriendly to the management of said company; that they are employed by rival coal companies, the said Zimmerman being employed by the New River Consolidated Coal Company, and the said Keller by the Sandy Creek Company; that the former of said companies is selling its coal in competition with the coal sold by the Carbon Fuel Company; and that the latter rival company owns or controls, mines in the Kanawha Coal Fields and in the State of Ohio, and also produces and sells coal in competition with the Carbon Fuel Company. But it is not alleged that either relator, or Zimmerman, has any interest in said rival companies, other than that derived from their employment. He alleges that if said rival coal companies employing relator and Zimmerman could obtain the information which relator seeks it would be of great detriment to the Carbon Fuel Company, and the companies whose coal it sells, including the Wake Forest Mining Company. But respondent does not allege that relator is seeking the information for the purpose of disclosing it to said rival companies, or that he would so disclose it, if he could get it.

Relator demurred to respondent's return to the writ, and the court sustained the demurrer; and respondent not desiring to make any other or further answer, a peremptory writ was awarded on the 11th day of November, 1907.

To the judgment of the circuit court granting this writ respondent obtained a writ of error from this Court.

T. A. Bartlam, vice-president and secretary of the Wake Forest Mining Company, and J. R. Thomas, another director, were also named as defendants in relator's petition. But they made their separate returns expressing their willingness to permit relator to examine any and all records and books pertaining to the business of the company, and the proceeding was discontinued as to them.

The question which this record presents for our decision is: Has a director in a private corporation a right to know all the details of the business affairs of his corporation? The question would seem to answer itself. A director directs, guides, manages. He is one of the trustees, entrusted with the direction and management of the business pertaining to his corporation; then is it not necessary that he should have all the information in regard to the affairs of his company that he can obtain, in order

that he may direct its operations intelligently and according to his best judgment in the interest of all the stockholders whom he represents? . Of what value to his company would his judgment and services as director be, if the keeper of its accounts and records should withhold from him all information in regard to the details of the business?

Can the general manager of a corporation, even though he be a director, withhold the books, records and papers of which he is only the custodian, and which are the property of the whole corporation? We say not. The general manager is the creature of the directors, and his powers can not exceed theirs. The creature is not greater than his creator.

The director is a trustee, or agent, of his corporation; he is the trusted representative of all the stockholders and is entitled to all the information belonging to his company that will enable him to manage and direct the affairs of his corporation to its best interests. His duties and responsibilities, and consequently his rights, are much greater than those of a mere stockholder; and at the common law even a stockholder was permitted to inspect the books and .records of the corporation, provided he did so without interfering with its business operation; and in order to defeat his right to do so, it was necessary to show that he wanted the information for some improper purpose. Cook on Stock and Stockholders, sec. 511 (3rd Ed.) thus states the law: "The stockholders of a corporation had, at common law, a right to examine at any reasonable time any one or all of the books and records of the corporation." And in the same section, in regard to the right of a director, he says: "A director has an absolute right to examine all the books of the company, even though he is hostile to the corporation. But in Connecticut a contrary rule is laid down where he is seeking information in order to organize a rival company." Citing the case of *Hemingway* v. *Hemingway,* 19 Atl. Rep. 766 (58 Conn. 443). This was an action for an assault brought by one director against another for an assault committed on him in taking from his possession a letter file which he was using for the purpose of copying the contents. It appears that there were only these two directors and that they constituted the company, each owning one-half the stock, and that the one who complained of the assault was seeking the information for the purpose of forming a rival

company. The assault was justified on the ground, (1) that no more force was used than was necessary to take from him the papers, and (2) that the party assaulted was seeking to get the information for a purpose detrimental to the corporation.

· The right of a director to inspect the records of his company is thus stated in 10 Cyc. 770: "Every director has a right to inspect the books and records of the corporation, in order to ascertain what the corporation is doing, and the majority of the board cannot lawfully exclude a minority from this right." The same doctrine is held in the following cases, viz: *Stone* v. *Kellogg,* 62 Ill. App. 444; *Phoenix Iron Co.* v. *Commonwealth ex rel. Sellers,* 113 Pa. St. 563; *State* v. *St. Louis &c. Co.,* 124 Mo. App. 111; *People* v. *Central Fish Co.,* 117 N. Y. App. Div. 77; *The People ex rel. Muir* v. *Throop,* 12 Wend. 183; *Lewis* v. *Brainard,* 53 Vt. 519; *Huyler* v. *Cragin Cattle Co.,* 40 N. J. Eq. 392; *The People ex rel. Richmond* v. *The Pacific Mail Steamship Co.,* 50 Barb. 280. See also High on Extraordinary Remedies, sec. 308; 2 Cook on Corp. (6th Ed.) sec. 511; Hellwell on Stock & Stockholders, sec. 337; 7 Thomp. Corp., sec. 8480; 5 Cur. Law 834; and 2 Clark & Marshall on Corp. 1646.

But it is insisted by counsel for plaintiff in error that this common law right of a director, or a stockholder, to inspect the records and papers of a corporation, has been very much modified, and limited, in West Virginia by statute.

Relator is both a stockholder and a director; but, inasmuch as he is seeking this information in his capacity as director, it is not necessary for us to decide, nor do we mean to decide, how far the common law rights of a stockholder have been limited by our statute. We shall confine our observations alone to relator's right to have the inspection of the records and papers as a director.

It is claimed that sections 43, 46, 47, 49, 51, 52 and 60 of chapter 53 of the Code, define the powers and duties of the board of directors of such a corporation as the one in which relator is director, and limit the actions, rights and duties of the board of directors, and require that all action shall be by the board as a unit.

If section 47 does not limit the common law right of a director, none of the other sections referred to do so. It reads as follows: "The property and funds, books, correspondence and

papers of the corporation, in the possession or control of any officer or agent thereof, shall at all times be subject to the investigation of the board of directors, or a committee appointed for the purpose by a general meeting of the stockholders. The minutes of the resolutions and proceedings of the board shall for thirty days before the annual meeting of the stockholders, be open to the inspection of any committee appointed, in writing, by the holders of at least one-twentieth part of the total value of outstanding shares, or by the holder or holders of such number of shares. They shall be produced when required by the stockholders at any general meeting." What is the proper construction of the words "board of directors," as used in this section?

It is claimed that by the words, "board of directors," the legislature meant to limit the right of investigation to the board as a whole, or as a unit; and that this section takes away the right of an individual member of the board to make such investigation, except at a board meeting; that if such had not been the intention of the legislature, the statute would have contained the words, "or any individual member thereof," following the words, "the board of directors." We do not think the legislature intended to deny the right of individual investigation, nor do we think the statute should be given such an effect by construction.

This Court has announced the following rule in reference to the construction of statutes: "If the sense of a statute be doubtful, such construction should be given, if possible, as will not conflict with general principles of law." *B. & L. Ass'n.* v. *Sohn,* 54 W. Va. 101. "Statutes changing the common law are strictly construed and it is not further abrogated than the language of the statute clearly and necessarily requires." Lewis' Suth. Stat. Const. (2nd Ed.), sec. 573; and to the same effect is the case of *Bailey* v. *Gardner,* 31 W. Va. 94.

The statute says the books, correspondence and papers, &c. "shall at all times be subject to the investigation of the board of directors." This evidently means that the officer, or agent of the corporation, who has charge of such records, papers, &c., shall be ready at any reasonable time, within business hours, to exhibit them to any individual director who may desire to see them. Each director must see for himself. The board of directors, as a whole, could not make the investigation; they could not all conveniently read the same book, or paper, at one and

the same time; and it is clear that the legislature intended that each member should, *at some time,* have the right to investigate, with his own hands and eyes, and for himself; and it would be unreasonable to hold that it meant that each one could investigate only when they were all together, each examining in turn, until all had completed the investigation. Then, if each one has the right to inspect all the records with his own eyes, at some time, what possible reason could there be for not permitting him to do so at a time which might best suit his own convenience, provided his doing so does not unnecessarily interfere with the business operation of his corporation? If there is no right of individual investigation by each director, and if the time and manner of making investigation must depend upon the action of the entire board at a meeting the law would, in effect, give the majority members the power to deny to the minority the right to investigate certain parts of the record, papers and correspondence, *at any time,* by voting down any resolution providing for an investigation that might be offered by the minority. The statute was not intended to have this effect, and to give it such would be an unreasonable construction.

There are other reasons apparent in the law why the right of individual examination of the records and papers should be given to each member of the board. The Constitution of 1872 evidently intended that the minority stockholders should have representation on the board of directors, by providing cumulative voting in the election of directors. And why provide for this representation on the board if the advantage to be given by such representation is to be nullified by putting it in the power of the majority of the directors to deny the minority certain information with regard to the business of the corporation which might be of greatest importance to them in enabling them to guard the interests of those by whom they were elected.

Furthermore, the law charges the directors with an important duty, and places upon them certain liabilities, and it may often be essential that they should have all the information concerning the business management of the corporation in order to protect themselves against individual liability as well as to enable them to discharge their duties as the agents, trustees or directors of the corporate affairs. Again, the statute requires an annual report to be made each year by the board of directors

of the business of the corporation for the benefit of its stockholders, which duty is upon the board as a whole. But the board is made up of individual members, each acting and casting his vote according to his best judgment and belief upon the information which he possesses. How, then, can he be expected to subscribe to a report dependent upon, and largely made up from the more minute affairs and business details of the corporation, concerning which he has no individual knowledge? The law certainly requires each director to discharge his duty to his corporation with fidelity and to the best of his ability, and does not intend that one member of the board should be charged with any greater duty, or held to any greater responsibility, than another, and designs that all the directors shall have equal rights.

We construe the words "board of directors," as used in section 47, chapter 53, of the Code, to apply to the board, both as a unit, and also to each individual member composing the board of directors; and we hold that each individual director has the right to inspect "the property and funds, books, correspondence and papers of the corporation," at all reasonable times, and within reasonable hours, without unnecessarily interfering with the business operations of their company. It is not necessary for us to decide in this case, nor do we decide, whether or not this right of examination by a director could be lawfully refused in the event it is shown that he sought the information for a purpose detrimental to the interest of the corporation; because this question does not arise in the case. Respondent's return to the writ does not allege that relator sought to make the investigation for the purpose of using the information he would obtain in a manner detrimental to his company; it is therefore unnecessary for us to decide what our holding would have been if it had been alleged that it was his intention to use the information for such a purpose. The question was decided on demurrer and the allegations of the return must be taken as true; but it is nowhere alleged that relator intended to use the information to the injury of his corporation.

We find no error in the judgment of the lower court and will affirm it.

*Affirmed.*