# CHARLESTON.

FRIEDMAN v. CRAIG *et al.*

Submitted November 9, 1915.   Decided November 23, 1915.

1. OFFICERS—*Holding Different Offices—Notary Public—Clerk of Court.*
    The offices of deputy clerk of a county court and notary public are not incompatible, and the clerk's acknowledgment to a tax deed, taken and certified by a notary public who is also the clerk's deputy, is valid. (p. 224).

2. TAXATION—*Tax Deeds—Invalidity.*
    A tax deed is not void for any of the following reasons:
    (a)  Because at the head of the page of the delinquent land book, on which is the owner's name, appear the printed words, "suspended for sale by the sheriff," when, on other pages just preceding it, those words are canceled, and the words, "delinquent for non-payment of taxes," are written by the clerk in their stead.
    (b)  Because the owner's name in the assessment is spelled Joseph Freedman, and in the delinquent list and tax deed Joseph Fredman, instead of Joseph Friedman, the correct spelling of it.
    (c)  Because the estate of the owner is not mentioned in the delinquent list or in the sales list.
    (d)  Because the delinquent list was allowed by the county court at a special term, the notice whereof contained no reference to the proposed filing thereof by the sheriff.
    (e)  Because the sheriff's affidavit to the delinquent list was made on the same day the county court allowed the list.
    (f)  Because it does not affirmatively appear that the sheriff posted and published the delinquent list for two weeks prior to the time of presenting it to the county court for examination, as required by Sec. 23, Ch. 30, Code 1913.
    (g)  Because the tax sale was made by the sheriff's deputy. The deputy sheriff can return land delinquent and sell same for taxes.
    (h)  Because it does not affirmatively appear that the sheriff offered to sell an interest in a town lot before selling it as a whole. (p. 225). .

Appeal from Circuit Court, Nicholas County.

Suit by Joseph Friedman against A. L. Craig and another, partners.   From a decree for defendants, the complainant appeals.

*Affirmed.*

*Harry Friedman, A. C. Lewis* and *John L. Hechmer,* for appellant.

*W. G. Brown,* for appellees.

WILLIAMS, JUDGE:

Joseph Friedman appeals from a decree of the circuit court of Nicholas county, made at the January term, 1914, dismissing his suit, brought to cancel a tax deed made to defendants, A. L. Craig and J. M. Wolverton, partners as Craig & Wolverton.

The first error assigned is, that the tax deed is void because it was acknowledged by the clerk of the county court before his deputy. *Webb* v. *Ritter,* 60 W. Va. 193, holds that an acknowledgment to the deed of a clerk, taken and certified by his deputy in such capacity, renders the deed inadmissible as evidence, for the reason that the act of the deputy is the act of his principal. Still it does not follow that a person, who is both deputy clerk and notary public, may not take and certify an acknowledgment of the clerk, in his capacity of notary public. The certificate in this case is made by "J. Lee Evans, Notary Public." Notwithstanding Evans was both deputy clerk and notary public, his certificate of the clerk's acknowledgment in the latter capacity is good. We recall no provision in the Constitution or statutes of this State, forbidding a clerk or his deputy, or a notary public from holding any other office, and none is cited in brief of counsel.

*Building & Loan Ass'n.* v. *Sohn,* 54 W. Va. 101, holds the office of notary public to be incompatible with that of judge. But that is because of an express provision in Sec. 16, Art. VIII of the Constitution, relating only to judges, forbidding them to hold "any other office, appointment or public trust." However, that case decides that a certificate of acknowledgment, taken by a notary public, who had accepted and was then holding the office of judge, was valid as being the act of a de facto officer. So that, under the authority of that decision, if the office of deputy clerk and notary public were incompatible, the acknowledgment in this case would not be invalid on the ground of incompatibility of the two offices. But they are not incompatible. True some states have held them

to be so, but that is because the constitutions or statutes of those states expressly provide that a notary public shall not hold any other office, as in Nevada and Texas, for example. *State* v. *Clarke,* 37 Am. St. Rep. 517, and *Biencourt* v. *Parker,* 27 Tex. 558. The rule forbidding a deputy clerk, as such, to certify the acknowledgment of his principal rests upon a mere technicality, the theory being that the deputy's act is the act of his principal, and the same, in effect, as if the principal had taken his own acknowledgment. But we can see no valid reason why a person, holding the office of deputy clerk, may not take the chief clerk's acknowledgment in the capacity of notary public. We would certainly not be forbidden to do so because of any supposed improper influence arising out of his subordinate position. In the Appendix to Vol. 8 Mo. App. 602, stating the points decided in cases not reported, we find the following was decided by that court: "A notary who is also deputy-sheriff may take the sheriff's acknowledgment of a deed of foreclosure made by the latter as a trustee under a deed of trust." And in *Cook* v. *Foster,* 96 Mich. 610, it was held, that a deed executed by the under-sheriff, on the foreclosure of a mortgage by him, could be acknowledged before the sheriff, who was a notary public.

For the foregoing reasons the affidavit of the clerk to the land books for the year 1908, certified by J. Lee Evans, notary, is also valid.

Complaint is made that the delinquent list was not properly recorded, that the heading contains the words, "Suspension from Tax Sale," instead of the words, "Delinquent for non-payment of taxes." The delinquent list is made out on printed forms, in a bound book. A copy of page 72 of that book is exhibited with plaintiff's bill, and that page is headed with these words: "List of Real Estate within the County of Nicholas suspended from sale by the Sheriff in the month or months .............. 1 .............. for non-payment of the taxes due thereon for the year 19...." On this page appears the names of persons charged with lands in Richwood Independent District. Plaintiff's name appears as Joseph *Fredman,* and in other columns to the right of the name and directly opposite it, is the lot of land, "Lot 13", with which he is charged, and its local description given as

"Cranberry Street"; in other columns appear the figures showing the amounts of taxes for the various purposes for which taxes are levied. Defendants filed, as exhibits with their answer, copies of the two next preceding pages, 70 and 71, of the book of delinquent lands. From them it appears that a line was drawn through the words, "Suspended from sale by the Sheriff in the month or months of," at the head of the page, and the words, "Delinquent for the non-payment of taxes due thereon for the year 1908," written in by the clerk. Plaintiff could not have been misled to his prejudice by the printed heading of the page on which his name appeared, for he must have known he had not paid the taxes for the year in question. In his deposition he says he wrote to A. W. Bobbitt, sheriff of Nicholas county, on January 20, 1910, inquiring if he held any tax bills against his property in Richwood, and received no reply. That was nearly a year before the tax sale, which occurred in December, 1910. The reason he gives for writing to the sheriff is, that, in looking over letters and papers received from his agents at Richwood, he found no tax receipt for the year 1908, that being the year for which his land was returned delinquent and sold, although he admits paying the taxes for 1907, and also for the years subsequent to 1908. So that, notwithstanding the appearance of the words "suspended from sale" at the head of that page of the delinquent list containing plaintiff's name, it could have meant nothing else to him than that his land was returned delinquent for non-payment of taxes.

The next assignment is, that plaintiff was assessed in the name of Joseph *Freedman* instead of Joseph Friedman, his true name, and, in the list of sales returned and in the deed to defendants, the name is written Joseph *Fredman*. The variation from the correct spelling of plaintiff's name could not have misled him. He admits he paid taxes for the year 1909 and knew his name was spelled on the tax duplicates *Freedman*. Spelling the name *Freedman* and *Fredman* is not such a departure from plaintiff's true name as to have misled him. *Hamill* v. *Glover*, 74 W. Va. 152. This case is different from *Collins* v. *Reger*, 62 W. Va. 195, where the name Martha *Hedrick* was held to be a different name from Martha Helmick, and *Male* v. *Moore*, 70 W. Va. 448, where it was held, that an

assessment and sale in the name of *Hoonbrook* was void because misleading to the true owner whose name was Hornbrook. There is no such material variance from the true name in this case. Seeing the name Joseph Freedman, or Joseph Fredman, plaintiff would naturally think he was the person intended. In *Stevenson* v. *Henkle,* 100 Va. 591, the name "Basic City Chilled and Roller Iron Works Co." was held not to be a material variance from the correct name, which was "Basic City Chilled Roll and Iron Works." An assessment in the name of Ellen *Marcier* was held not to be misleading to the owner whose name was Ellen Macier. *City of Detroit* v. *Macier,* 117 Mich. 68, 75 N. W. 285.

Neither the delinquent list nor the sales list mentions the estate of plaintiff in the land, and this omission is assigned as error. Such omission does not invalidate a tax title. *Hamill* v. *Glover, supra,* and *Fleming* v. *Charnock,* 66 W. Va. 50. It is a mere irregularity which could not mislead the owner, and is cured by Sec. 25, Ch. 31, Code 1913.

The next assignment is, that the delinquent list was allowed by the county court at a special session, the notice for which contained no mention of a proposed presentation of the delinquent list; also, that the sheriff's affidavit to the list was made on the same date the list was allowed by the court. Granting that the county court was without jurisdiction to pass upon the delinquent list at a special term because the notice contained no mention of such matter, still *Hornage* v. *Imboden,* 57 W. Va. 706, expressly decides that the county court's action, in such case, is only an irregularity in the tax sale proceedings, cured by Sec. 25, Ch. 31. Point 4 of the syllabus in that case is as follows:

"The fact that a list of lands delinquent for taxes was acted on at a special term of a county court, in the call for which no reference was made to action on such list, will not invalidate a tax deed."

The court's passing on the delinquent list at a special-term could not have changed or affected the fact of plaintiff's actual delinquency and, therefore, could not have prejudiced him. The failure to return the delinquent list within the time prescribed by statute is only an irregularity, cured by Sec. 25,

Ch. 31. *Hogan's Admr.* v. *Piggott,* 60 W. Va. 541; *State* v. *McEldowney,* 54 W. Va. 695.

Sec. 23, Ch. 30, Code 1913, requires a copy of the delinquent list to be posted at the front door of the courthouse and to be published in two newspapers of opposite politics, for at least two weeks before the session of the county court to which the delinquent list is presented for examination. And it is argued that the list was not posted, because the sheriff's affidavit to the delinquent list bears the same date as the court's order allowing the list. This is a non sequitur. The statute does not say the affidavit shall be made to the list before posting, and, for aught the record discloses, the sheriff may have posted and published it as the statute requires. But, whether he did or not, *Hornage* v. *Imboden, supra,* decides that his failure to do so does not invalidate a tax deed, that it is only an irregularity, cured by Sec. 25, Ch. 31.

It is next claimed that the tax sale is illegal because made by the sheriff's deputy. There is no merit in this point. Sec. 16, Ch. 13, Code 1913, provides as follows: "When a statute require an act to be done by an officer or person, it shall be sufficient if it be done by his agent or deputy, unless it be such as cannot lawfully be done by deputation." And Sec. 9, Ch. 31, expressly recognizes the right and authority of a sheriff's deputy to return real estate delinquent for nonpayment of taxes, and to make sale thereof.

The sheriff's failure to reply to plaintiff's letter asking for information concerning the taxes on his land, is relied on as a fact misleading him to his prejudice. The person to whom plaintiff wrote was not at that time sheriff and tax collector of the county, his term of office having expired; nor is there any evidence that the ex-sheriff received plaintiff's letter. But if he did, and failed to reply to it, that fact could not affect the tax sale proceedings.

Some years previous to the tax sale, defendants had been plaintiff's agents at Richwood to look after his property, lease it, collect the rents and pay his taxes out of the rents when directed by him. But that relationship had ceased long before the tax sale, and there is no pretense on the part of plaintiff that they were his agents at the time of their tax purchase. He does contend, however, that there is a balance due him on

account between them, amounting to more than the taxes, interest and costs of the tax sale. This fact is denied and disproved by defendants.

The land is a lot with buildings thereon in the town of Richwood, and it does not appear by the record that the sheriff previously offered to sell an undivided interest therein before selling the entire lot. The presumption, however, is that he proceeded in the manner prescribed by statute. In the absence of proof on the question, it will not be inferred that he violated his duty in that respect. *Hamill* v. *Glover, supra.*

That a stranger should acquire title to an owner's land, for the small sum of one year's taxes assessed thereon, does seem to be a hardship. But, for the purpose of enabling the state to get its revenues without unreasonable delay, the legislature enacted the statute providing for the sale of lands for delinquent taxes, and the court is bound to give effect to the law so clearly expressed. Every property owner must know that he owes a duty to help support his state government by payment of taxes, and if he should lose his land by neglecting to perform that duty, he has only himself to blame for his misfortune. He is allowed a year after tax sale in which to redeem his property; the time is reasonable, and he should be diligent to know that he has discharged his public duty.

We find no error in the tax sale proceedings justifying a reversal of the decree complained of, and it will be affirmed.

*Affirmed.*