No. 17-0641 – *McElroy Coal Co. v. Schoene*

FILED
**April 13, 2018**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WALKER, J., concurring, in part, and dissenting, in part:

I agree with the majority's answer to the first certified question finding valid the deed waivers dating back to 1902. Likewise, I agree with the majority's answer to the third question allowing for damages where a proven violation of the West Virginia Surface Coal Mining and Reclamation Act[1] (Act) exists. Though I ultimately agree with the majority's answer to the second question regarding enforcement of the Act, I write separately because I believe the majority's analysis is unclear. Finally, as to the majority's answer to the fourth question regarding the appropriate party to select the remedy, I respectfully dissent.

In my view, the Fourth Circuit's second question[2] requires us to undertake a two-part analysis. The first part of the question requires us to assess whether the Act authorizes an action against a coal mine operator for damage to a landowner's property arising from subsidence alone. Or, alternatively, whether mere subsidence, absent

---

[1] W. Va. Code §§ 22-3-1 through -33 (1994).

[2] Certified Question No. 2 provides:

> Assuming the surface lands and residence of a landowner have been materially damaged from subsidence, does the West Virginia Surface Coal Mining and Reclamation Act (W. Va. Code § 22-3-1 *et seq.*, (the "Act") authorize an action against the coal mine operator for the damage so arising; or, are landowners only permitted to seek injunctive relief compelling compliance with the Act's provisions? *Compare* W. Va. Code § 22-3-25(a), *with id.* § 22-3-25(f).

1

something more, limits the landowner to injunctive relief. Second, the Fourth Circuit requests that we compare West Virginia Code § 22-3-25(a) with § 22-3-25(f). In doing so, we step away from damage arising from subsidence alone and consider a hypothetical situation where a coal mine operator has violated the Act, both with and without resulting injury. Though I ultimately reach the same conclusion as the majority on both points, I write separately to underline the critically important distinction between damage resulting from subsidence alone and injury resulting from a violation of the Act, as well as to discuss the alleged violation in this matter.

Simply put, if a landowner's surface land or residence has been materially damaged from subsidence alone, the landowner's remedy is limited to compelling the coal mine operator to comply with the Act. As the majority points out, this Court has found that subsidence is a natural consequence of underground mining and not necessarily evidence of a violation of the Act.[3] Likewise, the Act's accompanying regulations contemplate subsidence by long-wall mining—West Virginia Code of State Rules § 38-2-

---

[3] *See* Syl. Pt. 4, *Rose v. Oneida Coal Company*, 195 W. Va. 726, 466 S.E.2d 794 (1995).

16.2.c[4] defines material damage resulting from subsidence, while § 38-2-16.2.c.1[5] and -16.2.c.2[6] provide the methods by which it may be corrected. Additionally, as the majority concludes, these regulations act together to limit a landowner who has suffered damage from subsidence alone to the injunctive relief provided therein.

Next, I turn to the comparison of West Virginia Code § 22-3-25(a) with § 22-3-25(f)—a step that the majority opinion never quite reaches. West Virginia Code § 22-3-25(a) provides in relevant part:

> (a)     Except as provided in subsection (b) of this section, any person having an interest which is or may be adversely affected

---

[4] West Virginia Code of State Rule §38-2-16.2.c provides:

> Material damage. Material damage in the context of this section and 3.12 of the rule means: any functional impairment of surface lands, features, structures or facilities; any physical change that has a significant adverse impact on the affected land's capability to support current or reasonably foreseeable uses or causes significant loss in production or income; or any significant change in the condition, appearance or utility of any structure from its pre-subsidence condition. The operator shall:

[5] West Virginia Code of State Rules § 38-2-16.2.c.1 provides: "Correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible, by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence[.]"

[6] West Virginia Code of State Rules § 38-2-16.2.c.2 provides: "Either correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence. . . ."

3

may commence a civil action in the circuit court of the county to which the surface-mining operation is located on the person's own behalf *to compel compliance with this article*:

(1)     Against the State of West Virginia or any other governmental instrumentality or agency thereof, to the extent permitted by the West Virginia Constitution and by law, which is alleged to be in violation of the provisions of this article or any rule, order or permit issued pursuant thereto, *or against any other person who is alleged to be in violation of any rule*, *order or permit issued pursuant to this article. . . .*[7]

West Virginia Code § 22-3-25(f), however, states:

(f)     *Any person or property who is injured through the violation by any operator of any rule, order or permit issued pursuant to this article may bring an action for damages, including reasonable attorney and expert witness fees, in any court of competent jurisdiction.*  Nothing in this subsection affects the rights established by or limits imposed under state workers' compensation laws.[8]

The plain language of West Virginia Code § 22-3-25(a) authorizes an action to compel performance against an operator only where the operator has violated a rule, order or permit pursuant to the Act.  And the plain language of West Virginia Code § 22-3-25(f) is triggered when injury results from an operator's violation of the Act, permitting an action for damages.  I, once again, reach the same conclusion as the majority.  But the majority stops there, moving straight into a damages analysis.  Despite a lengthy recitation of the facts in this case, the majority ignores the elephant in the room and in my view stops

---

[7] Emphasis added.

[8] Emphasis added.

short of providing any meaningful guidance to the Fourth Circuit.

This case turns on whether McElroy violated the Act and whether the Schoenes suffered an injury because of that violation. The Schoenes argue that McElroy violated its duty under West Virginia Code of State Rules § 38-2-16.2.c.2 to repair or compensate them for damage resulting from subsidence by "dragging its feet and obstructing the compensation process for nearly three years." The record, however, shows that the Schoenes refused offers of compensation for damages and refused to communicate with McElroy. Rather than partaking in meaningful discourse with McElroy as it attempted to remedy the damage to the Schoenes' residence, it appears the Schoenes simply elected to file a lawsuit instead.

It seems to me that, in order to find a violation of the Act in this case, one would need to find that a coal mine operator's refusal to pay whatever amount a landowner deems appropriate—no matter how outrageous[9]—constitutes a violation, such that a landowner may circumvent the statute and instead pursue an action for damages.[10]

---

[9] The Schoenes maintained until trial that $870,720 in repairs were required to remedy subsidence damage to the residence and $1,126,378 would be necessary to repair the land (later conceding to $322,440 at trial).

[10] Although the jury determined that the diminution in value to the Schoenes' residence was $94,000, the District Court awarded $547,000, consisting of $350,000 to repair the residence, $172,000 to repair the land, and $25,000 for annoyance, inconvenience, aggravation, and/or loss of use.

5

In responding to the fourth question,[11] the majority concludes that the Act is ambiguous as it opines that the associated regulations are silent as to who—between the coal mine operator and the landowner—is to choose the remedy for the repair of a surface structure. I disagree.

West Virginia Code of State Rules §§ 38-2-16.2.c and 16.2.c.2 provide that "[t]he operator shall . . .[e]ither correct material damage resulting from subsidence caused to any structures or facilities. . .or compensate the owner of such structures or facilities in the full amount[.]" Though certainly a minor technical point, Merriam Webster defines "either" as "being the one or the other of two." Accordingly, the plain language of the statute is that the operator must do one of two things: "correct material damage. . .or compensate the owner."

After finding the rule to be ambiguous, the majority embarks on a remedial-

_____

[11] Certified Question Number 4 provides:

> Lastly, the regulations issued under the Act provide that when a coal mine operator causes subsidence damage to the "structures or facilities," the operator must either correct it or "compensate the owner. . .in the full amount of the diminution in value" as a result of the mining. *See* W. Va. Code R. § 38-2-16.2.c.2; *see also id.* § 38-2-16.2.c.1. The regulations, however, do not designate which party gets to make this election between remedies if the parties fail to reach an agreement. Between the landowner and the coal mine operator, who elects the appropriate remedy and what standards govern that decision?

6

statute interpretative analysis that amounts to nothing more than judicial improvisation. Essentially, the majority reasons, since the Act is remedial legislation, it should be liberally construed to effectuate its purpose. It concludes that since most of the purposes of the Act are to protect the public, the environment, and surface owners from adverse effects of coal mining, it should be liberally construed to work in the best interests of those groups.

But this approach fails to acknowledge the practical function of the Act. Notwithstanding the valid deed waivers for damage by subsidence, the Act undermines a coal operator's common law property rights by requiring it to remedy damage resulting therefrom. This Court has stated that "[i]f the sense of a statute be doubtful, such construction should be given, if possible, as will not conflict with general principles of law."[12] Considering this, along with the fact that a coal mine operator bears the burden of remedying the damage, the Act should be narrowly construed to allow the coal mine operator to elect which remedy he must fulfill — either correcting or compensating.

---

[12] *State ex rel. Keller v. Grymes*, 65 W. Va. 451, 456, 64 S.E. 728, 730 (1909) (quoting *Old Dominion Building & Loan Ass'n v. Sohn*, 54 W. Va. 101, 46 S.E. 222 (1903).